Ronald NEWMAN, a Minor, by Alvin H. Frankel, his Guardian

v.

Daniel W. FREEMAN

and

James Mason and Mary Mason, his wife.

Civ. A. No. 37915.

United States District Court
E. D. Pennsylvania.

Oct. 12, 1966.

[redacted]

OPINION

JOHN MORGAN DAVIS, District Judge.

The minor plaintiff, a citizen of Pennsylvania, was injured in an automobile accident on June 29, 1964, allegedly as the result of the negligence of the defendants, also citizens of Pennsylvania. After the appointment of a New Jersey guardian for the minor, an action for the child's damages was seasonably instituted in this court on the basis of our diversity jurisdiction. The child's father then brought a seperate action in the Court of Common Pleas of Montgomery County, Pennsylvania for the damages he sustained as a result of his son's injuries.

We have before us the plaintiff's motion to amend his complaint to include the claim of the minor's father for medical expenses and loss of services due to the minor's injuries.

Under Rule 15(a) of the Federal Rules of Civil Procedure a party must seek leave of court or written consent of the adverse party before he may amend his pleadings if a responsive pleading has been served. The rule also states that "leave shall be freely given when justice so requires."

The defendants, however, contend that we cannot permit this additional claim because the father's joinder will destroy diversity since he is a citizen of Pennsylvania. The plaintiff argues, on the other hand, that this additional claim for relief comes within our pendent jurisdiction.

[redacted] Under the doctrine of pendent jurisdiction, this court has power over any claim for relief not otherwise subject to its jurisdiction so long as it derives from a common nucleus of operative fact with a federal claim that is properly within our power as outlined in Article III of the Constitution. As stated in United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), "* * * [I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." See Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Taussig v. Wellington Fund, Inc., 313 F.2d 472 (3d Cir. 1963).

The Supreme Court cases that have applied pendent jurisdiction have involved a federal claim rather than one under our diversity power. Nevertheless, in Borror v. Sharon Steel Company, 327 F.2d 165 (3d Cir. 1964), the doctrine was extended to permit a valid diversity claim to act as the basis of jurisdiction for other claims that could not otherwise be brought into federal court. In that case, an out of state administrator of a decedent's state brought an action under the Pennsylvania Survival Act, Pa.Stat.Ann. tit. 20, §§ 320, 601, for the benefit of the decedent's estate and under the Pennsylvania Wrongful Death Act, Pa.Stat. Ann. tit. 12, § 1601, for the benefit of the decedent's parents. The question arose

as to whether the wrongful death action was properly before the court since the decedent's parents and the defendant were all citizens of Pennsylvania. The court, first of all, sustained the jurisdiction on the theory that the administrator had a right to bring the action and that his citizenship was controlling.

However, the opinion went further by stating that even if the parents were the required parties the wrongful death action was properly before the Court on the basis of pendent jurisdiction, there being no dispute concerning the court's diversity jurisdiction over the survival claim. The court reasoned that while the two actions were distinct, they were very much dependent on one another. They arose out of the same acts, and damages were not to be duplicated. As Judge Biggs phrased it, they were a "kind of legal hybrid, Siamese twins of the Pennsylvania law, joined together by the nexus of damages." Borror, supra, at 173.

In the case now before the court, we have a similar situation. We have two claims that originate from the same occurrence and involve physical injuries to the same person. The damages to the parents here emanate directly from the tort committed against their child. Moreover, under Rule 2228(b) of the Pennsylvania Rules of Civil Procedure, 12 P.S.Pa. Appendix [1] which incorporates a longstanding policy of the Commonwealth, the claims of the parents and minor must be enforced in one action.

This principle of pendent jurisdiction was recently applied in Wilson v. American Chain and Cable Company, 364 F.2d 558 (3d Cir. 1966). There the minor had been injured by a rotary power mower. His father brought an action as his child's guardian for damages sustained by the minor and also in his own right for damages he sustained as the child's parent. The trial judge dismissed the father's own claim on the basis that it did not meet the $10,000 jurisdictional amount. The Court of Appeals reversed, holding that the father's claim could be brought with his son's claim on the theory of pendent jurisdiction. The court recognized that cases where pendent jurisdiction was applied usually involved one plaintiff and that this case involved two distinct plaintiffs, although they were the same person suing in different capacities. Nevertheless, it found such a close relationship between these claims for relief that this difference was not seen as a bar. Judicial economy, and convenience and fairness to the parties were the court's overriding considerations.

■■ We think the principle of the *Wilson* case, supra, applies here. The defendants, however, argue there are now two different individuals as plaintiffs while in *Wilson* the plaintiffs were actually the same person so that diversity was never destroyed. To us, this is an insignificant distinction. The whole basis of pendent jurisdiction is the fact that one claim is within our jurisdiction and the other would not be if it stood alone. The reason why it is not within our power seems to be immaterial, and no cases have been pointed out to us by counsel where such distinction has been drawn. In *Wilson,* the father's claim was considered defective because it did not meet our monetary jurisdiction. The $10,000 requirement and the diversity requirement are both limitations on our power to hear cases, and we can see no distinctions between them for the purposes of the motion now before us.[2] So long as one claim is substantial and is properly before us and the other derives from the same operative facts in the manner it does here and logically would

1. Rule 2228(b) of the Pennsylvania Rules of Civil Procedure provides: "If an injury, not resulting in death, is inflicted upon the person of a minor, and causes of action therefor accrue to the minor and also to the parent or parents of the minor, they shall be enforced in one action

brought by the parent or parents and the child."

2. We, of course, recognize that one is of constitutional origin and the other of statutory origin.

be tried in the same proceeding, we have power to adjudicate the entire controversy. United Mine Workers of America v. Gibbs, supra.

■ We are not persuaded by the defendant's argument that the rule of complete diversity as enunciated in Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) must be rigidly maintained. We need not belabor this point except to point out that the principle is not followed whenever the doctrine of ancillary jurisdiction is operative or the case involves statutory interpleader. See 1 Barron & Holtzoff, Federal Practice and Procedure §§ 23, 26; Wright, Federal Courts, §§ 24, 74, 75 and cases cited therein; Diversity of Citizenship; The Interpleader Act, 63 Harvard Law Review, 886 (1950); 28 U.S.C. § 1335. Indeed, the defendants' argument was implicitly rejected in Borror, supra, where the court applied pendent jurisdiction to an action under the Pennsylvania Survival Act and the Wrongful Death Act. The survival claim was lawfully before the court under our diversity jurisdiction, and the question was whether the wrongful death claim with the parents and defendants as citizens of Pennsylvania could still be maintained in the court despite a lack of diversity. The appellate court answered in the affirmative.

■ We hold, therefore, that where a minor is injured and suit is brought by a guardian for his damages and diversity of citizenship exists between the guardian and the defendants, a claim by the child's parents for damages resulting to them from the tort committed against their child may properly be brought with the minor's claim under our pendent jurisdiction even though diversity of citizenship may be lacking vis-a-vis the parents and the defendants.

We believe that our holding implements the purpose of pendent jurisdiction to foster judicial economy, and convenience and fairness to the litigants while at the same time it remains within the limits of our power as prescribed in Article III of the Constitution of the United States.

The defendants, however, have raised another contention. They claim that the amendment to the complaint is barred by the applicable Pennsylvania Statute of Limitations since it comes more than two years after the injuries occurred. See Pa.Stat.Ann. tit. 12, § 34.

The accident out of which both claims for relief arise occurred on June 24, 1964. The complaint of the guardian on behalf of the minor was timely filed on April 22, 1965. A separate action for the parent's claim was commenced in the Court of Common Pleas of Montgomery County on June 15, 1966, a few days before the Statute of Limitations ran.

■ There is no question that if the minor's claim had been instituted in the state court within the necessary two year period and there had been an attempt to amend the complaint to include the parent's cause of action after the two year period had run, it would have been disallowed. Pennsylvania law provides that a second cause of action may not be tacked onto one already instituted if the time provided by the Statute of Limitations has expired.

Talley v. Pierson, 33 F.R.D. 2 (E.D.Pa. 1963); Piacquadio v. Beaver Valley Service Co., 355 Pa. 183, 49 A.2d 406 (1946); Casseday v. Baltimore & Ohio R. R., 343 Pa. 342, 22 A.2d 663 (1942); Lumen v. Paley, 342 Pa. 317, 20 A.2d 752 (1941); Bowers v. Gladstein, 317 Pa. 520, 178 A. 44 (1935); Bahas v. Wilczek, 324 Pa. 212, 188 A. 139 (1936); Wright v. Eureka Tempered Copper Co., 206 Pa. 274, 55 A. 978 (1963); Goodrich-Amram, Standard Pennslvania Practice §§ 2228 (b) 1, 2232(a); Cf. Davis et al. v. Caruso, 60 Schuylkill Legal Record 65 (C.P. Schuylkill Co. 1964). Furthermore, Rule 2232(a) of the Pennsylvania Rules of Civil Procedure specifically provides:

"The cause of action of a person required to join in an action as a party plaintiff by Rule 2228 shall be barred by failing to join therein if the defendant has given such person such notice of the pendency of the action as the

court by general rule or special order shall direct." [3]

On the other hand, we are confronted with Rule 15(c) of the Federal Rules of Civil Procedure which states:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

We must now resolve the question whether we shall apply the Pennsylvania Statute of Limitations and Rule 2232 of the Pennsylvania Rules of Civil Procedure which would disallow the parent's claim to be joined with that of the child's guardian at this stage or Rule 15(c) of the Federal Rules of Civil Procedure which would permit them to be consolidated.

In this area of the law, we are faced with two conflicting Supreme Court decisions. The first is Ragan v. Merchants Transfer & Warehouse Company, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). This action for damages resulting from an automobile accident had been instituted in the Federal District Court in Kansas on the basis of diversity of citizenship. The accident occurred on October 1, 1943, and the complaint was filed with the court on September 4, 1945. However, it was not served upon the defendant until after the two year Kansas Statute of Limitations had run. While the action commenced when the complaint was filed under Rule 3 of the Federal Rules of Procedure, it would not have commenced and the Statute of Limitations would have continued to run under Kansas law until the defendant was served. The question before the Supreme Court was whether the Federal Rule or Kansas law applied. The Court held that under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) the

federal court must resort to state law. The Court reasoned that since the action would have been barred in a Kansas court, it could not be enforced in a federal court, sitting in a diversity matter. Otherwise out-of-state litigants who could resort to a federal tribunal would have an advantage over those limited to the state courts. In addition, it found it impossible to distinguish between the case where local law terminated the right to sue before rather than after the complaint was filed in federal court. See *York,* supra.

The second and more recent Supreme Court case that concerns us here is Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The question presented was "whether, in a civil action where the jurisdiction of the United States district court is based upon diversity of citizenship between the parties, service of process shall be made in the manner prescribed by state law or that set forth in Rule 4(d) (1) of the Federal Rules of Civil Procedure." Under Massachusetts law, the complaint had to be served personally on the defendant, who was an administrator of an estate. However, it was served by leaving a copy of the complaint with his wife at their home, conduct clearly sanctioned by the Federal Rules. The District Court granted the defendant's motion for summary judgment on the basis of Ragan, supra, and York, supra, and the Court of Appeals affirmed. The Supreme Court reversed, holding that Rule 4(d) (1) must be applied rather than local law. The Court rejected any rigid "outcome determinative" test under Erie and York and emphasized the underlying policies of those cases to discourage forum shopping and to avoid inequitable administration of the laws. The Court ruled that the application of Federal Rule 4(d) (1) would be "of scant, if any, relevance to the choice of a forum" and that it did not "alter the mode of enforcement of state-created rights in a fashion sufficiently 'substantial' to raise the sort of equal protection problems to which the Erie opinion al-

---

3. Proper notice was given.

luded." The Court then held that the principles of Erie and York did not apply in situations where the validity of a Federal Rule was concerned and that the latter must always be utilized so long as it does not violate the Rules Enabling Act 28 U.S.C. § 2072 or the Constitution. The majority opinion concluded:

"To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act. Rule 4(d)(1) is valid and controls the instant case."

As Mr. Justice Harlan noted in his concurrence, this opinion is somewhat perplexing. In the first place, the majority while citing the *Ragan* case, never discussed it or in any way attempted to reconcile it with the present decision. Secondly, *Hanna* seemed to undercut the doctrine of *Erie* and its progeny with its alternative holding. As Mr. Justice Harlan stated:

"So long as a reasonable man could characterize any duly adopted federal rule as 'procedural,' the Court, unless I misapprehend what is said, would have it apply no matter how seriously it frustrated a State's substantive regulation of the primary conduct and affairs of its citizens. Since the members of the Advisory Committee, the Judicial Conference, and this Court who formulated the Federal Rules are presumably reasonable men, it follows that the integrity of the Federal Rules is absolute. Whereas the unadulterated outcome and forum-shopping tests may err too far toward honoring state rules, I submit that the Court's 'arguably procedural, *ergo* constitutional' test moves too fast and far in the other direction."

Mr. Justice Harlan would apply local law "if the choice of rule would substantially affect those primary decisions respecting human conduct which our constitutional system leaves to state regulation." *Hanna*, supra at 475, 85 S.Ct. at 1146. See also Hart & Wechsler, The Federal Courts and the Federal System at 678.

We believe that *Ragan* and *Hanna* are irreconcilable with the latter overruling the former *sub-silentio*. See 1A Barron & Holtzoff, Federal Practice and Procedure, § 448.1. See also Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953). Both involved the clash between a Federal Rule and local law; yet in *Ragan*, the court found in favor of the latter but in *Hanna* in favor of the former. Moreover each applied different standards.

We are satisfied that *Hanna* more nearly approached the correct rule when it rejected a mechanical "outcome determinative" test under *Erie* and *York* and added forum shopping and equal administration of law as considerations. As *Hanna* rightly recognized, the test used in *Ragan* without more would easily lead to a complete emasculation of the federal rules. Any case in which there was a conflict between a Federal Rule and a local law would invariably mean a victory for local law if outcome were the sole test since it is highly unlikely that parties would litigate the issue if it did not significantly affect the result of the case.

While we are sympathetic with the reasoning and formulation set forth by Mr. Justice Harlan in his concurring opinion, we believe that we shall reach the same result here by adhering to the guidelines of the majority opinion.

The question of amending the complaint after the statute of limitations has run to allege another claim arising out of the same facts as stated in the original complaint does not seem to us to be the sort of matter that will play a substantial role in the forum shopping process. In almost all cases, both the parent's claim and the minor's claim will probably be brought at the same time. We can even assume that it is the parents who will usually take the initiative in having a suit instituted on behalf of their offspring. They will rarely have the child's claim filed in federal court rather than

state court because they fear they might neglect their own claim and wait until the Statute of Limitations has run before joining it to their child's action that has been timely filed. In any event, they will hardly be more likely to choose a federal forum because of the relation back provision of Rule 15(c) than the plaintiff in *Hanna* was likely to choose a federal forum because of a less exacting method for service of process.

We cannot believe that by permitting the amendment sought here, we are altering the enforcement of state created rights so as to give those able to invoke our jurisdiction a substantial advantage over those who may not do so. The only advantage that the out-of-state litigant has is the ability to add a second inextricably related claim after the expiration of the Statute of Limitations to a case already pending in the federal court. Such a privilege is not one that gives rise to an equal protection problem, especially when the second claim had been brought in the state court within the requisite period.

To look at the matter in another way, the defendants are not significantly harmed by the allowance of the amendment, for both claims have been filed timely, although in different courts. Defendants have had fair notice of the underlying factual contentions as well as the damages sought. It is true that the Pennsylavnia courts would not permit the second cause of action to be joined with the first after the statute has run. However, all we are doing is to permit one consolidated trial rather than two trials in two separate forums.

■ It seems to us that our decision is proper insofar as state policy is or should be a consideration in deciding whether to apply the federal rule or local law. See Hanna, supra, 380 U.S. at 475–478, 85 S.Ct. 1136. See also Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). It is rudimentary that the purpose of a Statute of Limitations is to provide a cut-off point for stale claims and to give potential defendants a fixed point

in time when they will no longer have to fear a lawsuit. We have not vitiated this policy, since each action here was seasonably instituted.

■ The state rule requiring joinder of these two claims has at least two purposes as we see it. One is to foster judicial economy. Pennsylvania does not want its courts trying in two parts issues based on the same underlying facts. The second purpose is undoubtedly to add to the convenience of the litigants. As to the first, Pennsylvania has no real interest in our judicial economy. Moreover, the workload of the state judiciary will hardly be affected since there would be no more than one trial in the state court no matter what our decision. As to the convenience and fairness to the parties and witnesses generally, we are certainly implementing that policy by allowing the parent's claim to be joined with the minor's in our court, even though the defendant is presently opposing consolidation.

Finally, to use the words of Mr. Justice Harlan, we do not believe that the application of Rule 15(c) "substantially affects those primary decisions respecting human conduct which our constitutional system leaves to state regulation." See Hanna, supra, 380 U.S. at 475, 85 S.Ct. 1136, 1146.

■ The Federal Rule must prevail in any event for an additional reason. Under the Supreme Court's alternative holding in *Hanna,* supra, any state law or rule which conflicts with a valid Federal Rule must fail. Since we find no difficulty in saying that Rule 15(c) is constitutional and comes within the Rules Enabling Act which provides that the rules shall "not abridge, enlarge, or modify any substantive right," state law must bow to Rule 15(c). See Barthel v. Stamm, 145 F.2d 487, 491 (5th Cir. 1944); Sibbach v. Wilson & Co., 312 U.S. 1, 655, 61 S.Ct. 422, 85 L.Ed. 479 (1940).

The defendants rely on Stafford v. Roadway Transit Co., 165 F.2d 920 (3d Cir. 1948) where the plaintiff had brought a survival action within the requisite period but had attempted to bring

its companion, a wrongful death action, after the Statute of Limitation had run. The Court of Appeals denied the amendment. This case, however, is inapposite. First of all, no wrongful death action had been timely instituted in any forum. Secondly, and perhaps more importantly, it was decided prior to Hanna v. Plumer, supra.

We are satisfied that justice requires us to permit the amendment sought here under Rule 15(a) and that the amendment relates back to the original pleading under Rule 15(c).

### ORDER

And now, this 9th day of January 1967, it is hereby Ordered that the plaintiff's motion to amend the complaint by adding George Newman as an additional plaintiff be and the same is Granted.

It is further Ordered that the original Complaint be amended as set forth in the "Plaintiff's motion to Amend Complaint to add a New Count:" which was filed with the Court on October 12, 1966.